**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


**LISA JEAN SHAULIS,**

       **Plaintiff,**

    **v.**                         **Civil Action 2:18-cv-1266**
                                    **Chief Judge Edmund A. Sargus, Jr.**
                                    **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

       **Defendant.**



### REPORT AND RECOMMENDATION

Plaintiff, Lisa Jean Shaulis ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security ("Commissioner") denying her

application for social security disability insurance benefits.  This matter is before the Court on

Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Memorandum in Opposition

(ECF No. 12), Plaintiff's Reply Memorandum (ECF No. 13), and the administrative record (ECF

No. 8).  For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors

be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

### I.      BACKGROUND

Plaintiff filed her application for Title II Social Security Benefits on June 23, 2014,

alleging that she had been disabled since February 8, 2013.  (R. 530, 537.)  On May 4, 2017,

following administrative denials of Plaintiff's application initially and on reconsideration, a

video hearing was held before Administrative Law Judge Peter J. Boylan (the "ALJ").  (*Id.* at

344–67.)  Plaintiff, represented by counsel, appeared and testified.  Vocational expert Karen

Schneider (the "VE") also appeared and testified at the hearing. On May 19, 2017, the ALJ

issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security

Act. (*Id.* at 14–25.) On August 24, 2018, the Appeals Council denied Plaintiff's request for

review and adopted the ALJ's decision as the Commissioner's final decision. (R. 4–8.) Plaintiff

then timely commenced the instant action. (ECF No. 1, 3.)

## II.     THE ALJ'S DECISION

On May 19, 2017, the ALJ issued a decision finding that Plaintiff was not disabled within

the meaning of the Social Security Act. (R. 14–25.) At step one of the sequential evaluation

process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity since

February 1, 2014, Plaintiff's alleged disability onset date.[2] (*Id.* at 17.) The ALJ found that

Plaintiff had the severe impairments of major joint dysfunction, multiple arthropathies, chronic

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step
sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive
finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th
Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.     Is the claimant engaged in substantial gainful activity?
2.     Does the claimant suffer from one or more severe impairments?
3.     Do the claimant's severe impairments, alone or in combination, meet or equal the
       criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20
       C.F.R. Subpart P, Appendix 1?
4.     Considering the claimant's residual functional capacity, can the claimant perform his
       or her past relevant work?
5.     Considering the claimant's age, education, past work experience, and residual
       functional capacity, can the claimant perform other work available in the national
       economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);
*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[2] Plaintiff's applications reflect an alleged disability onset date of February 8, 2013. (R. 530,
537.) However, both the ALJ during the hearing and in his decision, and Plaintiff in her
Statement of Errors, refer to February 1, 2014 as the disability onset date. (R. 346, 17; Statement
of Errors 1, ECF No. 9.) The undersigned is unable to explain this discrepancy, but it does not
bear on the undersigned's analysis.

obstructive pulmonary disease, migraines, affective disorder, anxiety disorder, and personality

disorder. (*Id.*) He further found that Plaintiff did not have an impairment or combination of

impairments that met or medically equaled one of the listed impairments described in 20 C.F.R.

Part 404, Subpart P, Appendix 1. (*Id.* at 17–18.) Specifically, the ALJ considered and rejected

Listings 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), 3.02 (chronic

respiratory disorders), 3.03 (asthma), 12.04 (depressive disorders), 12.06 (anxiety disorders), and

12.08 (personality disorders). (*Id.*) The ALJ did not, despite Plaintiff's counsel's express

request at the hearing, mention Listing 1.06 (fracture of the femur, tibia, pelvis, or one or more of

the tarsal bones) in his decision.

At step four of the sequential process, the ALJ set forth Plaintiff's residual functional

capacity ("RFC")[3] as follows:

> After careful consideration of the entire record, the undersigned finds that the
> claimant has the residual functional capacity to perform sedentary work as defined
> in 20 CFR 404.1567(a) and 416.967(a) except the claimant can never climb ladders,
> ropes, or scaffolds; occasionally climb ramps or stairs; occasionally stoop, crouch,
> crawl, or kneel; and frequently balance. The claimant must avoid concentrated
> exposure to extreme cold, extreme heat, humidity, fumes, odors, dusts, gases, and
> poor ventilation. The claimant requires the use of a cane in one hand to walk, but
> has the ability to use the free hand for work. The claimant is limited to occasional
> overhead reaching with the left upper extremity being non-dominant. The claimant
> is limited to simple, routine tasks, but is not able to perform at a production rate
> pace. The claimant is limited to simple, work related decisions. The claimant is
> limited to frequent interaction with supervisors, as well as occasional interactions
> with coworkers and the public. The claimant is limited to tolerating occasional
> changes in a routine work setting.

(*Id.* at 18–19.) The ALJ then relied on the hearing testimony of the VE to conclude that Plaintiff

is capable of making a successful adjustment to other work that exists in significant numbers in

---

[3] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20
C.F.R. § 404.1545(a)(1).

the national economy. He therefore concluded that Plaintiff was not disabled under the Social

Security Act during the relevant period. (R. 24.)

## III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the

Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to

proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C.

§ 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is

defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486

F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must

"'take into account whatever in the record fairly detracts from [the] weight'" of the

Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to

that finding 'even if there is substantial evidence in the record that would have supported an

opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v.

Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the

substantial evidence standard, "a decision of the Commissioner will not be upheld where the

SSA fails to follow its own regulations and where that error prejudices a claimant on the merits

or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742,

746 (6th Cir. 2007).

## IV. ANALYSIS

Plaintiff raises two issues in his Statement of Errors (ECF No. 9): (1) the ALJ failed to properly evaluate whether Plaintiff's non-union fracture of the navicular bone meets or medically equals Listing 1.06; and (2) the ALJ failed to explain and resolve a conflict between the vocational expert's testimony and the Dictionary of Occupational Titles. The undersigned will consider each asserted error in turn.

### A. The ALJ did not err in failing to consider Listing 1.06.

Plaintiff argues the ALJ committed reversible error when he failed to consider whether Plaintiff met or equaled the criteria of Listing 1.06 (fracture of the femur, tibia, pelvis, or one or more of the tarsal bones), even though Plaintiff's counsel specifically requested that the ALJ consider Listing 1.06 at the hearing. (R. 366.)

The relevant Social Security regulations require the ALJ to find a claimant disabled if she meets a listing. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). But neither the listings nor the Sixth Circuit require the ALJ to "address every listing" or "to discuss listings that the applicant clearly does not meet." *Sheeks v. Comm'r of Soc. Sec.,* 544 F. App'x 639, 641 (6th Cir. 2013). The ALJ should discuss the relevant listing, however, where the record raises "a substantial question as to whether [the claimant] could qualify as disabled" under a listing. *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir.1990); *see also Sheeks*, 544 F. App'x at 641. The Sixth Circuit has held that "[a] claimant must do more than point to evidence on which the ALJ could have based his finding to raise a 'substantial question' as to whether he has satisfied a listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432–33 (6th Cir. 2014) (citing *Sheeks,* 544 F. App'x at 641–42 (finding claimant did not raise a substantial question as to satisfying the listing for intellectual disability where the ALJ's finding of borderline intellectual functioning simply left open the question of whether he

5

meets a listing and where claimant pointed to only a few pieces of tenuous evidence addressing the listing)). "Rather, the claimant must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing." *Id.* (citing *Sullivan,* 493 U.S. at 530 ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of the criteria, no matter how severely, does not qualify.") and *Reynolds v. Comm'r of Soc. Sec.,* 424 F. App'x 411, 416 (6th Cir. 2011) (holding that it was not harmless error for the ALJ to fail to analyze Step Three as to an impairment found to be severe at Step Two where the claimant put forth evidence that could meet the relevant listing)). Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at Step Three. *Smith-Johnson*, 579 F. App'x at 433.

Plaintiff must therefore direct the Court to evidence in the record that raises "a substantial question" as to whether her impairment meets or equals Listing 1.06. This listing requires:

> Fracture of the femur, tibia, pelvis, or one or more of the tarsal bones. With:
>
> > A. Solid union not evident on appropriate medically acceptable imaging and not clinically solid;
> >
> > and
> >
> > B. Inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur or is not expected to occur within 12 months of onset.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.06. Plaintiff asserts, and the Commissioner does not dispute, that she meets Listing 1.06's "A" criteria because a July 13, 2015 X-ray notes that she suffered a "chronic nonunion fracture associated with the navicular bone [*i.e.*, one of the tarsal bones]" in her right foot. (R. 2472–73.)

However, the parties dispute whether Plaintiff meets Listing 1.06's "B" criteria, requiring an inability to ambulate effectively. This criterion is further defined in Listing 1.00B2b, which provides:

> Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.
>
> * * *
>
> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b.

Plaintiff argues that record evidence demonstrates a "substantial question" as to whether she can ambulate effectively, noting the following:

> Physical examinations noted instances of swelling and tenderness under the middle of the plantar fascia (Tr. 2562, 2567, 2572, 2577, 2582, 2587, 2593, 2602, 3280, 3286, 3292, 3677) aggravated by walking, weightbearing, and climbing/descending stairs (Tr. 2601), as well as decreased sensation in the bilateral feet (Tr. 2636, 2642, 2649, 2655, 2655, 2670, 3286, 3292, 3297, 3304, 3311, 3324, 3678) and ankle swelling (Tr. 2644, 2650, 2658). Additionally, [Plaintiff] was prescribed a cane for ambulation in August 2015 to assist with ambulation, and the assistive device was determined to be a "permanent" necessity by Dr. Imber Coppinger in January 2016 (Tr. 2667, 3670). Moreover, at the hearing, the claimant testified about her day-to-day activities, and the difficulty she has had navigating stairs, uneven surfaces, and performing tasks like shopping and retrieving her mail, which further demonstrated her inability to ambulate effectively under 1.00B2b (Tr. 351, 353, 360-61).

7

(Statement of Errors 5, ECF No. 9.) Although this evidence suggests that Plaintiff has some pain in her right foot, it does not speak to whether she can "sustain a reasonable walking pace over a sufficient distance to be able to carry out activities of daily life." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b. The use of a single cane, by itself, does not establish an inability to ambulate effectively. *See id.* (defining generally the "inability to ambulate effectively" as "having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of *both* upper extremities.") (emphasis added).[4] Further, the ALJ discussed record evidence in his Step 4 analysis noting that Plaintiff frequently demonstrated "normal gait and station," even after the July 13, 2015 X-ray demonstrating Plaintiff's navicular fracture. (ALJ Decision 7, ECF No. 8-2, referencing R. 2551, 2556 (describing Plaintiff as "ambulating normally" on October 7, 2015 and October 23, 2015).) *See also Lawson v. Comm'r of Soc. Sec.*, 192 F. App'x 521, 530 (6th Cir. 2006) (claimant did not meet § 1.00B2b's standard for inability to ambulate effectively because "[e]ach of the examining physicians found Lawson to demonstrate a 'normal' or 'unremarkable' gait."). Accordingly, Plaintiff has not raised a substantial question as to whether her impairments meet

---

[4] The Commissioner argues that Plaintiff cannot demonstrate an inability to ambulate effectively *unless* she requires the use of a hand-held assistive device that limits the functioning of both upper extremities, such as two canes, or a walker requiring the use of both hands. (Mem. in Opp'n 8–9, ECF No. 12). But although the use of a single cane by itself does not establish an inability to ambulate effectively, neither does it preclude such a finding. *See* Revised Medical Criteria for Determination of Disability, Musculoskeletal System and Related Criteria, 66 FR 58010-01 at 58026–27 ("The criteria do not require an individual to use an assistive device of any kind. The first sentence of final 1.00B2b stresses that '[i]nability to ambulate effectively means an extreme limitation of the ability to walk.' The ensuing explanation and examples should make it clear that this applies to anyone who cannot walk adequately."); *Kooser v. Comm'r of Soc. Sec.*, No. 3:15-CV-246, 2016 WL 4086982, at *4 (S.D. Ohio Aug. 2, 2016), *report and recommendation adopted*, 2016 WL 4989945 (S.D. Ohio Sept. 16, 2016); *Harris v. Comm'r of Soc. Sec.*, 384 F. Supp. 3d 874 (S.D. Ohio 2019).

or medically equal the criteria of Listing 1.06.  The ALJ therefore did not err in failing to consider the listing.

**B.      There is no unresolved conflict between the Vocational Expert's testimony and the Dictionary of Occupational Titles.**

Plaintiff argues that the ALJ committed reversible error because he relied on the VE's testimony without resolving a conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT") and its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO").  Plaintiff contends that, relying on the VE's testimony, the ALJ limited Plaintiff's RFC to occasional overhead reaching, which conflicts with the example occupations offered by the VE, all of which require frequent reaching under the SCO.

Social Security Ruling 00-04p states, in pertinent part, that "[w]hen there is an apparent unresolved conflict between VE [ ] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE [ ] evidence to support a determination or decision about whether the claimant is disabled.  At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency."  SSR 00-04p, 2000 WL 1898704, *2.  Where a conflict is apparent and the ALJ fails to resolve or explain the conflict, remand may be appropriate.  *Dawson v. Berryhill*, No. 1:17-CV-02090, 2018 WL 6681715, at *4 (N.D. Ohio Nov. 26, 2018), *report and recommendation adopted*, 2018 WL 6675306 (Dec. 19, 2018) (collecting cases).  However, for Ruling 00-04p to apply, Plaintiff must identify an actual conflict between the VE's testimony and the DOT or SCO.  *See Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009); *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168 (6th

Cir. 2009). Further, the ALJ and the VE are not bound by the DOT in making disability determinations. *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003).

Here, the ALJ stated at the hearing that he would "assume [the VE's] testimony is consistent with the information in the Dictionary of Occupational Titles unless [the VE] tell[s] me otherwise." (R. 363.) The ALJ then posed a hypothetical question to the VE, inquiring whether an individual with the functional abilities in the hypothetical could perform work in the national economy. (*Id.* at 363–65.) The ALJ limited the hypothetical individual to "occasional overhead reaching with the left upper extremity, with this being the non-dominant upper extremity." (*Id.* at 364.) The VE responded that the hypothetical individual could perform sedentary unskilled work, giving examples from the DOT of dowel inspector (669.687-014), nut sorter (521.687-086), and document preparer (249.587-018). (*Id.*) The ALJ later inquired whether the VE's opinion was "based on information from the Dictionary of Occupational Titles," to which the VE responded, "Otherwise; my experience in job placement over 14 years, Your Honor." (*Id.* at 365.) Plaintiff's counsel briefly cross-examined the VE, but did not inquire as to any conflicts between the VE's testimony and the DOT. (*Id.* at 365–66.) The ALJ's decision described Plaintiff as having the residual functional capacity for "occasional overhead reaching with the left upper extremity being non-dominant" and relied on the VE's testimony to find that Plaintiff is not disabled. (*Id.* at 19, 24.) The ALJ further noted in his decision that "[p]ursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." (*Id.* at 24).

Plaintiff argues that a conflict is apparent between the VE's testimony and the DOT and SCO, because the three example occupations identified by the VE all require the functional

capacity for "frequent" "reaching," whereas the ALJ limited the hypothetical individual to only "occasional" "overhead reaching with the left upper extremity." The Commissioner counters, and the undersigned agrees, that there is no apparent conflict between these two functional descriptions. "Reaching" is defined by the SCO as "[e]xtending hand(s) and arm(s) in any direction." SCO, App. C at C-3. No finer-grained distinctions are made as to reaching in the SCO or DOT. Thus, an occupation that requires frequent reaching may require reaching with only one hand, or only non-overhead reaching. The ALJ's hypothetical and ultimate RFC limited only Plaintiff's ability to reach overhead with her left hand; the ALJ imposed no restriction, and Plaintiff has not suggested any restriction is necessary, on her ability to reach with her right hand or to perform non-overhead reaching with her left. As the example occupations listed by the VE do not specifically require overhead reaching with the left hand, there is no apparent conflict between the VE's testimony and the DOT or SCO.

Further, even if there were an apparent conflict, the Sixth Circuit has stated that "the ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00–4p. This obligation falls to the plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT. The fact that plaintiff's counsel did not do so is not grounds for relief." *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168–69 (6th Cir. 2009) (citing *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009)); *see also Ledford v. Astrue*, 311 F. App'x 746, 757 (6th Cir. 2008) ("[N]othing in applicable Social Security regulations requires the administrative law judge to conduct his or her own investigation into the testimony of a vocational expert to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of the administrative law judge."). And, in any case, the VE explained that her testimony was based on her 14 years of

11

experience in job placement. (R. 365.) This explanation is sufficient to resolve any alleged conflict between her testimony and the DOT.

## V.    DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. For the foregoing reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VI.    PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE